UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM WILLIAMS,** | ) | CASE NO.  4:16CR14 |
| | ) | 4:19CV1884 |
| Defendant-Petitioner, | ) | |
| | ) | SENIOR JUDGE |
| vs. | ) | CHRISTOPHER A. BOYKO |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | OPINION AND ORDER |
| | ) | |
| Plaintiff-Respondent. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter is before the Court on Defendant's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255. (Doc. 158). For the following reasons, the Court **DENIES** Defendant's Motion.[1]

**I. BACKGROUND FACTS**

On January 12, 2016 the Grand Jury indicted Defendant and four others with various counts stemming from a narcotics conspiracy. Count One of the Indictment alleged Defendant participated in a Drug Conspiracy, in violation of 21 U.S.C. § 846. On February 28, 2017, Defendant executed a written Plea Agreement and pleaded guilty to Count One in exchange for the dismissal of the remaining counts.

---

[1] Defendant's Motion to Take Notice (Doc. 150) is **GRANTED**. The Court acknowledges that Defendant requested his case file from Attorney Pierce. Defendant's Motion for Action (Doc. 154) is **DISMISSED AS MOOT**. It appears Attorney Pierce provided the requisite information in October of 2019. (*See* Doc. 166, PageID: 1156, ¶ 4).

On June 19, 2017, the Court sentenced Defendant to 144 months imprisonment, followed by 3 years of supervised release. Defendant appealed his Sentence. On April 10, 2018, the Sixth Circuit affirmed the Sentence.

On August 15, 2019, Defendant executed the instant Motion under 28 U.S.C. § 2255, asking the Court to vacate his Sentence. He alleged the following two Grounds for Relief:

> **GROUND ONE:** Attorney Albert A. Palombaro's representation in the district court was constitutionally ineffective in violation of Petitioner's Sixth Amendment guarantee of effective assistance of counsel where he misrepresented Petitioner's sentencing exposure, failed to investigate, failed to adequately explain the criminal proceedings, and failed to move for a mental evaluation.
>
> **GROUND TWO:** Attorney Brian Pierce's representation in the district court was constitutionally ineffective in violation of Petitioner's Sixth Amendment guarantee of effective assistance of counsel where he failed to investigate, failed to adequately explain the proceedings, failed to move for a psychological evaluation, failed to present mitigating evidence at sentencing and was otherwise ineffective at sentencing.

(Doc. 158).

The Government opposed the Motion. (Doc. 162). Defendant thereafter filed a few documents in support of his Motion. (*See* Docs. 165, 166 & 167).

## II. LAW & ANALYSIS

### A.  Standard of Review

Section 2255 of Title 28, United States Code, provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Defendant's claims revolve around his mental competency throughout the proceedings. According to Defendant, he is mentally retarded. (Doc. 158, PageID: 1102). He argues both counsels should have recognized this and further investigated his mental condition. The Government counters arguing that Defendant's request is untimely. In the alternative, the Government contends Defendant's claims fail.

As discussed below, the Court gives the benefit of the doubt to Defendant as to the timing of his Motion. But, after a review of the merits, Defendant's Motion fails.

**B.** **Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Petitioner has a one-year period of limitation running from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the Sixth Circuit affirmed Defendant's Sentence on April 10, 2018. Defendant did not seek certiorari from the Supreme Court. Petitioner's claims therefore should have been raised before July 10, 2019.

While Defendant mailed his Petition on August 15, 2019, the Court finds that the statute of limitations was tolled. In *Dunlop v. United States*, the Sixth Circuit applied the following five factors for courts to consider when determining whether to equitably toll the statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." 250 F.3d 1001, 1008 (6th Cir. 2001).

Defendant claims he was unaware of the filing deadline because he did not know when the Sixth Circuit decided his case. The Government claims he did know. And to substantiate this claim, the Government attaches the Affidavit of Defendant's appellate counsel who swears she mailed the Sixth Circuit's decision to Defendant.

While this may be true, the Court agrees with Defendant in that counsel's mailing does not mean the decision reached Defendant. Defendant cites multiple instances of mail problems at the facility. Thus, two things may be true at once: (1) counsel mailed the decision to defendant at the facility; but (2) Defendant did not receive the mailing. In such a case, it is reasonable that Defendant did not know the filing deadline.[2]

---

[2] It also appears Defendant knew the habeas deadline was approaching and he was attempting to secure information to comply with that deadline. (*See* Docs. 150 & 154).

Accordingly, the Court equitably tolls the statute of limitations on Defendant's behalf and proceeds to the merits of his request.

**C.      Grounds for Relief**

Defendant claims both of his attorneys provided ineffective assistance of counsel by not investigating his mental health condition. To prevail on a claim of ineffective assistance of counsel, Defendant "must meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and subsequently tailored to the guilty-plea context, *see Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012)." *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). Under the performance prong, Defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Lafler*, 566 U.S. at 163. Under the prejudice prong, and in the context of pleas, Defendant "must show the outcome of the plea process would have been different with competent advice." *Id.*

Here, the decisions by both counsels to not investigate Defendant's mental competency were reasonable. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Regarding mental competency, "the bar for incompetency is high—a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him." *United States v. Coleman*, 871 F.3d 470, 475 (6th Cir. 2017). In determining whether competency is at issue, factors like a defendant's irrational behavior, demeanor at court proceedings or prior medical opinions are relevant considerations. *Id.*

Starting at the beginning of this case, there was no reason to call Defendant's competence into question. Early on, Defendant filed coherent requests for information (Doc. 38), made decisions on plea offers from the Government (Doc. 54) and asked the Court for new counsel after terminating prior counsel on the record (Doc. 62). Defendant's early dispute with Attorney Palombaro reflect a disagreement about the plea-bargaining process rather than any concern over mental competence. Defendant also requested a pre-plea sentence investigation to determine criminal history, not anything concerning his mental health. (Doc. 71).

At Defendant's change of plea hearing, the Court found that "Defendant ha[d] knowingly, voluntarily and intelligently entered his plea with a full understanding of his constitutional rights, [and] a full understanding of the plea agreement." (Doc. 114, PageID: 784). The Court made this finding after multiple opportunities to object or highlight relevant mental concerns. Again, Defendant raised no issue. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity").

Finally, at the sentencing hearing, Defendant presented no cause for concern. His demeanor was respectful and lucid, as he advocated for himself in a coherent and intelligent matter. *See Coleman*, 871 F.3d at 477 (Defendant's "articulated [and] passionate allocution" reflected his competence). Defendant acknowledged his crimes while asking for leniency to show he can do better. In the end, he promised to use his incarceration as an opportunity to better himself and his community. (*See generally*, Doc. 131, PageID: 824-26). Simply put, "nothing in Defendant's personal history, conduct in or out-of-court proceedings, provided a basis for" his attorneys to doubt his competency. *Coleman*, 871 F.3d at 478.

Defendant points to two occurrence that highlight his incompetence. The first occurred at sentencing when he mistook a question for IQ and answered with his GPA. But the Court did

not find this an indication of his mental incompetence. Just the opposite. The Court used this question to highlight Defendant's intelligence and understanding why he is a natural leader. While recognizing Defendant's intelligence, the Court agreed that Defendant used his intelligence for improper purposes. The Court disagrees that Defendant's misunderstanding of IQ versus GPA highlights a mental incompetency.

The second incident occurred when Defendant (and his mother)[3] told Attorney Pierce that Defendant had mental issues. This allegation presents a catch-22: on one hand, Defendant is arguing that he is mentally incompetent; on the other, he is telling the Court that he is competent to swear that certain facts happened. Nevertheless, Defendant had the opportunity to discuss his mental competency when Probation interviewed him for his Presentence Report. No claims of incompetence came to light. This fact discredits Defendant's claim that he spoke to Attorney Pierce about his mental condition. This fact also discredits his claim that he did not know mental health was a relevant sentencing consideration.

Defendant's presentence report does not present any reasonable reason for counsel to further investigate Defendant's mental condition. The fact that Defendant had behavioral issues during his youth and received social security do not support his claims. (*See* Doc. 97, PageID 676, ¶ 96). Not only did counseling stop when he turned 18, simple indications of "antisocial behavior" have no bearing on mental competence. *United States v. Heard*, 762 F.3d 538, 541-42 (6th Cir. 2014).

Defendant has not satisfied his burden in showing his mental incompetence. *Moore v. United States*, 2015 WL 3407228, *4 (W.D. Tenn. May 26, 2015) (a defendant "bears the burden of proving his incompetence at the time of his plea"). Nor did this Court observe any cause for

---

[3] According to the Presentence Report, Defendant's mother recognized Defendant's substance abuse issues and "other problems," but did not label those as mental health issues. Doc. 97, PageID: 675, ¶ 94.

concern during its interactions with him. Therefore, it is reasonable that his attorneys did not investigate the issue further. Even if counsel should have investigated Defendant's mental condition, the Court addressed any possible mental concern during sentencing, so the Court adequately considered Defendant's mental condition during its analysis of the 18 U.S.C. § 3553(a) factors. Thus, no prejudice could have resulted.

Ultimately, Defendant seems most upset that he did not receive a 120-month sentence like he expected.[4] Calculations based on the Plea Agreement yielded a guideline range of 120 to 150 months. Both parties agreed to argue within that range. (Doc. 87, ¶ 13). Both parties agreed that this Court could adopt whatever sentence it desired. (*Id.* at ¶ 14). Defendant initialed the Plea Agreement. The Court, over Probation's different calculation, adopted the parties' Guideline Range. The Government argued within that range as it was authorized under the Plea Agreement. The Court ultimately sentenced Defendant within the Guideline Range (albeit towards the higher end), just as Defendant agreed. Accordingly, Defendant was not improperly denied a 120-month sentence.

---

[4] *See* Doc. 158, PageID: 1100 (Defendant confused why the Government "offered 17 years instead of the 10" Attorney Palombaro allegedly promised); Doc. 166 (Attorney Pierce "told me that I would get 120 months if the prosecutor remained silent"); Doc. 166-3, Declaration of Michael Thetford, law clerk at the prison facility ("[Defendant] remains fixated on a 120 month sentence that he believes he should have received").

### III. CONCLUSION

There is nothing in Defendant's personal history or conduct in or out-of-court to doubt Defendant's competence.  In fact, record evidence suggested just the opposite.  For that reason, Defendant's Grounds for Relief are without merit and the Court **DENIES** Defendant's Motion. (Doc. 158).

**IT IS SO ORDERED.**

                                          s/ Christopher A. Boyko
                                          **CHRISTOPHER A. BOYKO**
                                          **Senior United States District Judge**

**Dated: February 11, 2021**